# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

HUSSEIN NAJI, as Personal Representative
of the Estate of ALI NAJI

      Plaintiff,

                                        Case No.:
                                        Hon.:

v.

CITY OF DEARBORN, and
JOHN DOE OFFICER

      Defendants.

---

**Cyril C. Hall (P29121)**
**Amir I. Makled (P76306)**
**Hussein S. Bazzi (P85891)**
HALL MAKLED, P.C.
*Attorneys for Plaintiff*
23756 Michigan Avenue, Suite 100
Dearborn, MI 48124
(313) 788-8888
Hussein@hallmakled.com
Amakled@hallmakled.com
chall@hallmakled.com

---

## COMPLAINT AND JURY DEMAND

    **NOW COMES** Plaintiff, HUSSEIN NAJI, as Personal Representative of

the Estate of ALI NAJI, by and through his attorneys, Amir Makled of Hall

Makled P.C., and in support of Plaintiff's Complaint states unto this Honorable

Court as follows:

## PRELIMINARY STATEMENT

1. This case arises out of the fatal shooting of ALI NAJI, a 33-year old Arab American male ("NAJI"), by a City of Dearborn Police officer, Defendant JOHN DOE ("DOE") on December 18, 2022. NAJI was the victim of unlawful deadly force. Plaintiffs duly appointed Personal Representative, HUSSEIN NAJI brings these federal and state law claims on behalf of NAJIS's estate to establish recognition that the shooting of NAJI was unjust and contrary to established law, to secure compensation for these wrongful acts, and to help end the violence perpetrated by the City of Dearborn against the people of this state.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff, HUSSEIN NAJI, is the duly appointed Personal Representative of the ESTATE OF ALI NAJI, DECEASED ("ESTATE") and resides in the County of Wayne, State of Michigan.

3. Upon information and belief, Defendant OFFICER JOHN DOE (hereinafter "DOE"), is a resident of the County of Wayne, State of Michigan, and an officer of the City of Dearborn Police

Department. At all material times, DOE was acting under color of state law.

4. Defendant, CITY OF DEARBORN, is a municipal corporation organized under the laws of the State of Michigan, charged with operating the City of Dearborn Police Department, within the County of Wayne. At all material times, Defendant CITY OF DEARBORN was acting under color of state law.

5. This is a civil rights action for damages brought pursuant to 42 U.S.C § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution and related state law claims, including the Michigan Wrongful Death Act, against the above-named Defendants for their wrongful acts, committed in Defendant DOE's individual capacity and for Defendant CITY OF DEARBORN's unconstitutional policies and procedures, resulting in the wrongful death of NAJI.

6. Jurisdiction is proper in this matter pursuant to 28 U.S.C § 1331, 1343, and 1367.

7. The conduct or occurrence giving rise to this cause of action is the shooting and wrongful death of NAJI on December 18, 2022 inside

of the Dearborn Police Station in the City of Dearborn, County of Wayne.

8. Pursuant to 28 U.S.C §§ 1391(b)(2), venue is proper before this Honorable Court, as the substantial portion of the aforementioned events took place within this judicial district.

## COMMON ALLEGATIONS

9. Plaintiff adopts and incorporates by reference each and every allegation in each preceding paragraph as though fully set forth herein.

10.    Plaintiff ALI NAJI was a lifelong Dearborn resident who graduated from Fordson High School, loved soccer, and had a bright future ahead of him. He worked as a barber and was hoping to live a productive life with his family. He was recently married, and his wife is pregnant.

11.    Plaintiff ALI NAJI was a truly remarkable individual. A man who lived his life to the fullest, always smiling, and full of love whose life was lost at the young age of thirty-three, just as he was about to embark on the most exciting chapter of his life.

12.    Those who encountered Ali Naji couldn't help but admire his unwavering positivity, his passion for making everyone around him happy

and his unceasing commitment to his loved ones.

13.     His recent marriage was a testament to his dedication to his soulmate, and the news of their upcoming child brought him nothing but pure joy. It is an unspeakable tragedy that he will not live to see his child born or grow. He would have been a loving and devoted husband and father, as he always put others before himself.

14.     This young man was deprived of living out the rest of his life due to the actions of Defendants, but in the short time he was on this earth, he accomplished so much. His heart was big, his spirit unbreakable and his impact on everyone he met immeasurable.

15.     The family and friends of Ali, including his father, mother, siblings, and wife, are now left only with memories which will forever be a source of inspiration to them and which they use to mask the forever mentally imprinted image of their son, brother, husband, and friend laying lifeless and riddled with bullet holes.

16.     Plaintiff ALI NAJI dealt with mental health illness for which he received treatment and addressed appropriately. Plaintiff Ali Naji lived a normal and productive life.

17.     On December 18th, 2022, Defendant John Doe, while acting in

his capacity as a Dearborn Police Officer, fired multiple bullets into the body of Ali Naji.

18.    Upon information and belief, Defendants were aware of Plaintiff Ali Naji's history of mental illness and same was evident on December 18, 2022.

19.    Ali Naji entered into the Dearborn Police Station at which time Defendant Doe slid the bullet proof glass and fired multiple bullets into the body of Ali Naji.

20.    According to the Medical Examiners Summary and Opinion there were multiple gunshot wounds present on the body of Ali Naji: head, chest, abdomen, left arm, penis, right leg, and left leg.

21.    Upon information and belief, the aforementioned officer(s), including Defendant DOE, posed a deadly threat to Ali Naji's physical safety without a cause known to Plaintiff as to why Defendant Doe deemed it appropriate to riddle the body of Plaintiff Ali Naji with bullets in his chest, abdomen, left arm, penis, right leg, and left leg.

22.    Defendant DOE slid the bullet proof glass window, which he was sitting behind, located at the front at the station and fired his

weapon multiple times.

23.     As a result of the unnecessary and unlawful use of deadly force, DOE sustained multiple gunshot wounds which lead to his death.

24.     An autopsy performed by the Wayne County Medical Examiner on December 19, 2022, confirmed the cause of death as "homicide", explaining that NAJI sustained multiple gunshot wounds to his persons.

25.     Defendant CITY OF DEARBORN failed to take appropriate action to correct Defendant DOE's tactics and use of force, failed to train this officer on excessive force and inappropriate tactics.

26.     Additionally, Defendant City of Dearborn has wrongfully withheld information pertaining to the subject after several FOIA requests were made.

27.     As a direct and proximate result of Defendants' actions as described above and below, Plaintiff Decedent and the heirs-at-law of Plaintiffs Decedent's Estate have suffered injuries and damages including but not limited to the following:

    a.  Conscious pain and suffering;

    b.  Death;

    c.  Loss of Decedent's society and companionship;

    d.  Loss of Decedent's earning capacity;

    e.  Funeral and burial expenses;

    f.  Mental anguish;

    g.  Severe emotional distress;

    h.  Fright and shock;

    i.  Exemplary damages;

    j.  Costs of litigation and attorney fees; and,

    k.  All other damages allowed under the Michigan Wrongful Death Act.

## COUNT I: DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C § 1983(FOURTH AMENDMENT - EXCESSIVE FORCE)

28.    Plaintiff adopts and incorporates by reference each and every allegation in each preceding paragraph as though fully set forth herein.

29.    Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution, Defendant DOE owed NAJI a duty to act prudently, with reasonable care, and otherwise to avoid unreasonable and excessive force.

30.    Reasonable officers in the position of Defendant DOE at the time of this incident – i.e. prior to the use of deadly force against

NAJI – would have known, in light of existing law, that the unlawfulness of this action was apparent under the circumstances, would be a violation of clearly established law, and of NAJI's constitutional rights against unlawful deadly force.

31.   Defendant DOE was informed of the definition of De-escalation as defined under the Dearborn Police Department Departmental General Order.

32.   General Order (GO) A-2.15, states in pertinent part that De-escalation is defined as "taking action and/or communicating verbally or non-verbally during a potential force encounter to stabilize the situation and reduce the immediacy of a threat so that more time, options, and resources are available to resolve the situation. De-escalation is also an effort to reduce or end the use of force after a threat has ended or diminished."

33.   The Dearborn Police Department Departmental General Order under GO A-2.15 section V. De-scalation states as follows:

> The most appropriate response to a given situation may be to try to defuse and de-escalate it using options which may include distance and cover, tactical repositioning, "slowing down" situations that do not pose an immediate threat, containment, calling for supervisory support, additional officers, and/or specialized units or resources. Officers shall,

when feasible, employ de-escalation techniques to decrease the likelihood of the need to use force during an incident and to increase the likelihood of voluntary compliance. Officers shall, when feasible, attempt to understand and consider the possible reasons why a subject may be noncompliant. A subject may not be capable of understanding the situation because of a medical condition, a mental, physical or hearing impairment, a language barrier, drug interaction, or emotional crisis, and have no criminal intent. These situations may not make the subject any less dangerous, but understanding the subject's situation may enable officers to calm the subject and allow the use of de-escalation techniques while maintaining the safety of the public and the officer. Disengagement may also be an effective option when officers know the identity of a person suspected of a minor offense, who poses no threat to public safety, and it would be safer to arrest or issue a citation later rather than engaging in a potentially dangerous pursuit or confrontation.

34. Defendant DOE failed to take any steps to de-escalate and deemed it appropriate to fatally shot ALI NAJI without any attempt to ascertain the purpose of his presence in the Dearborn Police Station.

35. As a direct and proximate result of the aforementioned conduct, NAJI suffered terror and fear as Defendant DOE fired his weapon multiple times causing his death. NAJI also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, loss of society and companionship, and ultimately death as the result of the aforementioned conduct.

36.     As a further direct and proximate result of the aforementioned conduct, NAJI's surviving family members, heirs and assigns, and/or next of kin have suffered permanent damages including, but not limited to: grief, anguish, emotional distress, medical and burial costs, loss of society and companionship, and other damages.

## COUNT II: *MONELL* LIABILTY AGAINST DEFENDANT CITY OF DEARBORN (UNCONSTITUTIONAL POLICY OR PROCEDURE IN VIOLATION OF 42 U.S.C § 1983)

37.     Plaintiff adopts and incorporates by reference each and every allegation in each preceding paragraph as though fully set forth herein.

38.     Defendant CITY OF DEARBORN had an unconstitutional policy, practice, and/or custom of allowing officers to use excessive force against citizens.

39.     Specifically, past incidents, including but not limited to the shooting of Kevin Matthews, an unarmed African American male on December 23, 2015, gave Defendant CITY OF DEARBORN actual and/or constructive notice of these unconstitutional uses of excessive force. And yet, CITY OF DEARBORN failed to take precautions and/or corrective measures prior to the shooting of

NAJI.

40.     Additionally, a second shooting occurred on January 27, 2016, when Janet Wilson, a 31-year-old African American woman, was fatally shot by a DPD officer while leaving a shopping center after an incident with mall security.

41.     CITY OF DEARBORN had an unconstitutional policy, practice, and/or custom of allowing officers to use excessive force against citizens after the above mentioned shooting incidents.

42.     On February 5, 2017, two armed individuals dressed in tactical vests and armed with multiple firearms entered the Dearborn Police Station.

43.     Defendant CITY OF DEARBORN failed to implement and/or enforce proper policies and procedures for incidents involving armed individuals entering the Dearborn Police Station.

44.     Defendant CITY OF DEARBORN's aforementioned polices, practices, and/or customs regarding the use of deadly force against non-dangerous subjects and/or mentally ill subjects was the moving force and proximate cause of Plaintiff NAJI's death.

45.     Defendant CITY OF DEARBORN had an unconstitutional

policy, practice, and/or custom of failing to train officers regarding the proper use of force and/or to adequately investigate and discipline police officers who used excessive force on citizens.

46.     Defendant CITY OF DEARBORN failed to adequately train and supervise Defendant DOE regarding the use of force and that failure was the moving force and proximate cause of Plaintiff NAJI's death.

47.     As a direct and proximate result of the aforementioned conduct, NAJI suffered terror and fear as Defendant DOE fired his weapon multiple times causing his death. NAJI also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, loss of society and companionship, and ultimately death as the result of the aforementioned conduct.

48.     As a further direct and proximate result of the aforementioned conduct, NAJI's surviving family members, heirs and assigns, and/or next of kin have suffered permanent damages including, but not limited to: grief, anguish, emotional distress, medical and burial costs, loss of society and companionship, and other damages.

## COUNT III: ASSAULT AND BATTERY (IN VIOLATION OF STATE LAW)

49.    Plaintiff adopts and incorporates by reference each and every allegation in each preceding paragraph as though fully set forth herein.

50.    The aforementioned actions and conduct of Defendant DOE as incorporated herein, were willful, wanton, intentional and/or reckless.

51.    The aforementioned actions and conduct of Defendant DOE as incorporated herein, created a reasonable apprehension of an immediate threat of harm and/or offensive touching to NAJI.

52.    The aforementioned actions and conduct by Defendant DOE as incorporated herein, did in fact constitute an offensive and harmful touching of NAJI, ie. Multiple shots being fired into the body of Plaintiff Ali Naji.

53.    Defendant DOE knew or should have known that his aforementioned actions and/or conduct would cause injury to NAJI and furthermore, his conduct did in fact cause the aforementioned injury to Plaintiff.

54.    As a direct and proximate result of the aforementioned conduct,

NAJI suffered terror and fear as Defendant DOE fired his weapon multiple times causing his death. NAJI also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, loss of society and companionship, and ultimately death as the result of the aforementioned conduct.

55.     As a further direct and proximate result of the aforementioned conduct, NAJI's surviving family members, heirs and assigns, and/or next of kin have suffered permanent damages including, but not limited to: grief, anguish, emotional distress, medical and burial costs, loss of society and companionship, and other damages.

## COUNT IV: GROSS NEGLIGENCE (IN VIOLATION OF STATE LAW)

56.     Plaintiff adopts and incorporates by reference each and every allegation in each preceding paragraph as though fully set forth herein.

57.     At all material times, Defendant DOE, as a City of Dearborn police officer, owed a duty to all persons, including NAJI, to avoid wanton, willful, or reckless misconduct; to avoid grossly negligent conduct; and to avoid conduct so reckless as to demonstrate a substantial lack of concern as to whether injury results.

58.    Notwithstanding the aforementioned duties, Defendant DOE, was grossly negligent, wanton, and/or willful in breaching the aforementioned duties in one or more of the following ways:

a. Discharging his firearm multiple times when he knew or should have known that he was not in imminent or immediate harm and that NAJI did not pose a physical threat to his safety or that of other officers or civilians; and

b. Other breaches of duty identified during the course of discovery.

59.    As a direct and proximate result of the aforementioned conduct, NAJI suffered terror and fear as Defendant DOE fired his weapon multiple times causing his death. NAJI also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, loss of society and companionship, and ultimately death as the result of the aforementioned wrongful, egregious, and illegal conduct.

60.    As a further direct and proximate result of the aforementioned conduct, NAJI's surviving family members, heirs and assigns, and/or next of kin have suffered permanent damages including, but not limited to: grief, anguish, emotional distress, medical and burial

costs, loss of society and companionship, and other damages.

## COUNT V
## VIOLATION OF THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1101, Et Seq.

61.    Plaintiff adopts and incorporates by reference each and every allegation in each preceding paragraph as though fully set forth herein.

62.    Because of his underlying mental illness, Plaintiff Decedent ALI NAJI suffered from a disability as defined under MCL 37.1103(d) of the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101, *et seq.*

63.    Defendant CITY OF DEARBORN operation and management of the Dearborn Police Department qualifies as a public service as defined under MCL 37.1303 of the PWDCRA.

64.    The opportunity to obtain full and equal utilization of public services without discrimination because of a disability is a civil right guaranteed by the PWDCRA.

65.    Defendant CITY OF DEARBORN has been representing to the public that that its DPD Officers are receiving training on how to deal with mentally ill citizens as stated in the Dearborn Police Department Manual.

66.     Dearborn Police Department Departmental General Order (GO) A – 1.8,

signed by Police Chief Issa Shahin, includes the following:

> a. The following tactics are suggested when dealing with persons with
> suspected mental illness, in emotional crisis or experiencing a mental
> disturbance:
> i. Officer safety, as well as the safety of others, including the person in
> crisis, is of the utmost importance and concern.
> ii. Be honest and polite. Introduce yourself and attempt to obtain the
> other person's name.
> iii. Remain calm and avoid overreacting. Express genuine concern and
> understanding.
> iv. If possible, remove distractions or disruptive people from the area.
> v. Determine if the subject is a threat to themselves or others and
> determine if there has been a violation of the law.
> vi. Take the most appropriate action, which may include counseling,
> guidance, placement in the care of family members, voluntary
> committal, protective custody with involuntary committal, or arrest.

67.     Upon information and belief, on December 18, 2022 Defendant Doe did

not utilize any of the tactics stated under GO A-1.8 section IV of the Dearborn

Police Manual.

68.     On at least one prior occasion when Plaintiff Ali Naji experienced a

mental health crisis, he received police assistance with transfer to the local

hospital for mental health treatment.

69.     Defendants failed to utilize a single de-escalation tactic or technique, and

instead fatally shot Plaintiff Ali Naji.

70.     Defendants' execution by gun fire at a mentally ill Naji was not only

reckless, excessive, and completely unnecessary, it was also a violation of

Mr. Naji's guaranteed civil rights to have the opportunity to receive public services without discrimination on account of his disability (mental illness).

71.     Defendants' actions as described above, violated the PWDCRA, and proximately caused injuries and damages as set forth and delineated above.

## COUNT VI – VIOLATION OF FREEDOM OF INFORMATION ACT

72.     Plaintiff adopts and incorporates by reference each allegation in each preceding paragraph as though fully set forth herein.

73.     Plaintiff submitted multiple FOIA Request to the Defendant City of Dearborn, on the City of Dearborn's designated Routine Police Records Request Form.

74.     The FOIA request seeks all information, including reports/audio/video of the fatal shooting of Plaintiff.

75.     Plaintiff has inquired about the status of the record on at least three separate occasions.

76.     To date, Plaintiff has not received the requested records.

77.     Defendant CITY OF DEARBORN has not sufficiently explained the reasoning for withholding such records.

78.     There exists no explanation sufficient, as a matter of law, to justify nondisclosure of the requested records.

79.    Plaintiff has been prejudiced by Defendant's nondisclosure of records and purposeful evading.

## RELIEF AND DAMAGES REQUESTED

WHEREFORE, Plaintiff HUSSEIN NAJI, as Personal Representative of the ESTATE OF ALI NAJI, Deceased, respectfully requests that this Honorable Court enter judgment in his favor against Defendants DOE and CITY OF DEARBORN, and award the following damages:

A.  Compensatory damages in excess of ten million dollars ($10,000,000.00);

B.  Costs incurred and attorney's fees pursuant to 42 U.S.C § 1988;

C.  Any and all damages recoverable under the Michigan Wrongful Death Act, MCL § 600.2922;

D.  Prejudgment interest; and

E.  Any other relief this Court deems equitable and just.

Respectfully submitted,

/s/*Amir I. Makled*
Amir I. Makled (P76306)
Hall Makled PC

23756 Michigan Ave., Ste. 100
Dearborn, MI 48124
(313) 788-8888

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

/s/*Amir I. Makled*
Amir I. Makled (P76306)
Hall Makled PC
23756 Michigan Ave., Ste. 100
Dearborn, MI 48124
(313) 788-8888